Good morning. Would you kindly approach the bench and identify yourselves? Your Honors, I'm William Tash on behalf of the FLE, Sebastian Maniscalco, T-A-S-C-H. And I'm Sean Mulroney, M-U-L-R-O-N-E on behalf of the FLE. All right. Very well. So let's start out at 15 minutes aside and the appellant can reserve time for rebuttal if you wish. I would like to. Okay. All right. Thank you very much. Good morning. Thanks for your attention to this. This is a case that's been tumbling through the court systems for quite a while, even before we got to the civil side of things. And I think, you know, maybe the most interesting thing about the case, not to disparage it in any way, what we're before you for is the fact that it kind of involves two rather collectible automobiles, a 1958 Corvette, which would be the American graffiti car in that style, and a 1970 Chevelle, which is an iconic muscle car. I think it probably, even though we've laid this out pretty clearly in our briefs, that just a quick go through the timeline to give you a sense of why we are where we are, because I think there's a little bit of uniqueness when we get to that thing. I have a question. Why wasn't the 214-01 refiled? It was not refiled. Why wasn't it? Why was it not? Right. Because at the time that, when the 214-01 was denied, dismissed for want of prosecution, in the same order was a turnover order, which allowed cars to be sold. Sorry, to sell $120,000 worth of cars. Did you appeal that? Are you appealing that or not? Well, I was appealing the underlying order, so I guess the answer is yes, we were. It was the DWP, which was twofold. It was dismissal of the 214-01 with the reinstatement of the order that continued. So I did a motion for consideration on that basis, which one was denied is why we're here. Yeah, we're in the brief as to say that you're also contesting the granting of the turnover. I never raised that in your briefs with regards to the turnover order. Well, let me put it this way. Where are the cars right now? They are being stored in the facility ordered by the trial court at the expense of my client. Okay. They have been there for several years. Based on the turnover order? Well, there was a turnover. It also had a section in that order which stated that he may maintain them until this matter was resolved. So they are sitting in the condition that they were transferred to this location at the cost of, you know, my client continues to pay the storage fees. Right. So on December 20th, did the court dismiss your 14-01? Yes. For want of prosecution? Correct. All right. So really the first issue that we have to address is whether or not that was any sort of final order that would be subject to appeal. Correct. And in that regard, again, I apologize for not being clear, but the point was by that dismissal, therefore the turnover order went back into effect. And with respect to the 214-01, it's, you know, filing a 214-01 is determined to be a new proceeding as it set out in the case. Right. But when you dismiss a case for want of prosecution, that's a non-final order for a year because you have the absolute right to refile. Correct. But I also cited the Pronto 2 case, which says the relief of petition involves equitable powers which should prevent the enforcement of a judgment, dismissal, and action which would be unfair or unjust or inequitable with respect to the 214-01. The dismissal of the 214-01 had the impact of immediately setting these things for sale by the sheriff. The difficulty that we had initially was at the same time I was moving to try to – But you could have reinstated it, couldn't you, when the court dismissed your case for want of prosecution? Well, that was the dilemma that I faced is that by doing so, I still would not have been able to stop the automatic sale which was ordered by the court. Those orders were always together. And if you look at the series of orders in which there are about 15 of them, each one kicks forward the turnover order which was issued at the time that the judge, O'Brien, found that there was unjust enrichment and did an award for $27,000 of change. What is this case you're citing? Is it in your brief? There's one called Pronto 2 v. Tishman, 274. Is this in your brief? Yes, ma'am, it is. Pronto, where is it? Is it in the reply brief? It's not in your points and authorities unless I'm looking at the wrong brief. It's on page 21. Yeah. Aren't you supposed to cite that in your authorities? Yes, ma'am, I certainly am, and I apologize for the oversight. It's on page 21 of your opening brief. Here, I'm looking at the wrong brief. Actually, it's on page 16 of my brief. I apologize. Top of the page. Okay. Pronto. Yes, ma'am. All right. Let's go back to your 214-01 petition. All right. So you file the petition, and then it gets dismissed for warrant of prosecution. Now, in the meantime, there was no response to the petition, correct? Correct. The way that it's laid out, at the time I filed it, as I said, defendant's counsel vehemently objected to it. Judge O'Brien from the bench said he was not sure that this was an appropriate filing in any case, and on the court's own motion, an order of October 15th, which is the record of 500, said he wanted to take time to determine ahead of time. He called it to check on the propriety of a 214-01 motion and set that for then October 30th, at which time he set a briefing schedule for us to comply with. At that time, after the briefing schedule had passed, we were approached by his defense saying, we'd like to settle it. At that point, by agreed order, he said, I'll run over and file an agreed order. This is when the mix comes up where there was three orders in two days over a three-day period of time. All right, so how do the equitable principles apply here since we have a petition that was never briefed, never argued, never presented before the court, and you're asking this court to reverse the trial court on equitable principles. What equitable principles? I'm asking for the vacation of the DWP in order that the 214-01 be briefed and argued. But all the other case law suggests that a DWP is not a final order until a year passes and then after that year has passed, the DWP becomes final, at which time then you could file a notice of appeal if you chose not to proceed. Again, it comes to the fact that because it was a very contentious matter, in fact, at the time of the award of $27,000, within a couple of days they filed a citation to discover assets. There was always an attempt not to have these cars sold to satisfy a judgment substantially less than they're worth, and that by that in conjunction with the fact that after multiple attempts on five different dates of trying to get cooperation from the defendant to actually see the cars was at that point that we found out that specifically the cars were not repaired in the way that they were alleged to have been. Under what Supreme Court rule do you think we have jurisdiction to hear this appeal, which in essence is a dismissal of a case for want of prosecution, which wasn't a final order? I look at it in conjunction twofold. One is the case that I cited in Pronto. Pronto is about whether or not, I recall now, that that's about whether or not a petition was filed within the prescribed time, whether due diligence had been shown. That's not about whether a 1401 that's dismissed for want of prosecution can be appealed. The thought process, which is what we went through, was that because of the immediacy of the essentially inequitable result of having the cars sold at the sheriff's sale, which had been ordered in the initial order, that there was no way to stop that process without filing a notice of appeal. So that was done with respect to the court's decision under... But you don't argue in your brief anything about this order of sale, do you? Again, I thought that was clear because each and every one of these orders suggests that that was the ultimate result, is that there was no way to stop the sale. Of course, we had made the presentation. There was an inequitable determination by the court on the back and forth for a couple of days when settlement discussions were being asked for by the defendant, and that at that point, in order for these cars... We literally went and filed the notice of appeal immediately in order to stop that sale. All right, but getting back to Justice McBride's question. So there's a DWP here, the 21401, all right? So how do we have jurisdiction here? Because Vaughn v. Pridewell tells us, the Illinois Supreme Court tells us, that even a DWP is an interlocutory order, and it's not appealable until it becomes final, which means when the time period runs out. Now, so how do we have jurisdiction in this case where you still had time to refile this 21401 and you didn't? Well, let me ask you this. I didn't see another solution. I noticed that there were two separate orders filed on December 20th, and one references the 21401. It's a handwritten order. It references the 21401. Justice McBride is correct to use the word denied, but it was denied for want of prosecution. And then it says the motion for turnover is granted as more fully set forth in a separate order. Then there's a typewritten order dated the same date, and the typewritten order doesn't reference the 21401 petition. It references the citation to discovery assets, which arguably is separate from the 21401 order. So my question to you is, here's an order that's entered pursuant to a citation to discovery assets, which goes back to the original case, not the 21401, right? Correct. And he enters a turnover order pursuant to the citation to discovery assets. So did you appeal this order? Yes, it's a short answer. These orders, the way they turned out was that the counsel defendant did the handwritten order and then went back to replace that order with the typed order. The defendant counsel pointed out that for whatever reason the handwritten order of the 30th was not on the record. He did a supplement to bring that order in. Okay. Based on the record that I appealed, it was the order of the 30th, which was this order, but having been there was a denial of a DWP on the basis, and then this order was typed obviously without review by me, sent before the judge. I did an immediate motion to reconsider those orders. That's why I'm looking at this. So let me ask you this. Can't you see I'm going to ‑‑ Are you tossing me a lab here? No, no. I'm tossing a big, fat softball, a 16-inch Chicago softball. Okay? The typewritten order references not the 214.01 petition. It references the citation to discovery assets, which arguably goes back to the original judgment that was entered for unjust enrichment. Right. So, yeah, he gets a judgment for unjust enrichment, and then he takes the next step and he files a citation, and then in the citation proceeding, which is arguably separate from the 214.01 proceeding, in the citation proceeding, he seeks this turnover. The 214.01 gets kicked out, and then he goes ahead and issues the turnover order. So, I mean, a turnover order is separately appealable, wouldn't you say? Yes. So my question is, just to be technical about this, how did your notice of appeal read? Did it appeal this order, this typewritten order? I haven't looked at that. It's an appeal of the 114th order, which was mostly considered the order of the 30th, which was that typewritten order. Okay. Now, I will point out that each and every, at the assistance of opposing counsel, each and every, and obviously there's no reason for me to go to the timeline, the number of times we stood before the court, particularly after this, with an effort to get the cars in the possession where they can be reviewed and so forth. In each and every one of those instances, the citation, the turnover, was carried forward by the order. It was always in the order that we were operating under, and that's true with each and every one of them, of which I think there are nine or ten. So that was part of the order to be appealed because by the DWP on the 214th, that order also stated that the turnover order, as set forth in separate orders, was granted. So that was the order that was being appealed. What I'm trying to do is get back to that. Aren't you appealing what happened on the 20th of December? You filed a motion to reconsider. On the 26th of December, you filed a motion under 1301 to challenge the judgment that the court entered on December 20th. He did two things. First of all, he dismissed your 1401 Rwanda prosecution. But for the first time, the way I understand it,  to satisfy the $27,000 judgment the court had entered in this unjust enrichment. Is that right? Was that the first time he said, Mr. Maniscalco's motion for turnover is granted as something or fully set forth in a separate order? Had he ever said before, I'm going to allow these cars to be sold so that you can get your $27,000? It may have been the actual original order as well. What do you mean? Back in May? Yes. Well, that doesn't really help you. Although I don't know that it's a final judgment until he grants the relief that the actual. No, that's not true. He had just done, that was just an award of the amount of money and then maybe he did the separation. Yes, because on May 21st, what was there? A presentation of the amount of money that was requested by the person who purchased the cars, Mr. Maniscalco, and the amount of. Correct. He requested $30,000 something, the judge gave him $27,000. They asked for $100,000. Okay, he gave him some $27,000. But at that time, the court never ordered that the cars be sold. That's correct. And then there were ongoing proceedings. Wasn't there a problem even finding the cars? Isn't there an indication that somewhere in the summer, Mr. Maniscalco told the court he had no idea where the cars were located? At the time of the initial, at the time he was granted his offset for the $27,000, we asked the court, could we see the cars? He said at that time he had no idea where they were. Yes. So then there was a series of motions, one of them being an emergency motion to get the Cook County Sheriff to go get them. Apparently we found out they were not in Cook County, they were in another county. DuPage. We got them, we posted a bond to cover it, we had them moved at our expense to the location where they still are today. Okay. Well, the way I'm reading this December 20th order, it looks like for the first time the court is granting a request of a judgment creditor for a turnover order. Then for the first time it says the vehicles are to be sold and the proceeds applied in partial or full satisfaction of the judgment entered, and all of this is done pursuant to 2-1402. This is, in fact, the first time that that was the order to go to, as Sheriff said. All right. Let me ask a question. On your motion for appeal bond, part of it you were asking for a relief that the turnover of the titles, the vehicles, be provided to the client. Correct. So does your notice of appeal also address this issue with regards to the turnover? It does not. Because at the time I did the motion before you to adjust the appeal bond, it was that we put a bond for these cars, so the judgment is covered. So at that point, what is the reason for him continuing to incur expenses and hold the cars? This court decided that you denied that, so we just are where we are. As things sit right now, Mr. Maniscalco holds the two titles. They were never turned over, despite that it was determined by the trial judge that we had better title because of the award that was done, and that was not resolved. So we made a demand for the titles. It was denied, and we ended up in this ongoing litigation. It was until we, after multiple attempts with the aid of the court to get the cars, then we discovered that they had not been repaired as they had been stated to do. And I will state that Judge O'Brien each one says, these cars better be in the condition you have represented them to be. We went through that with multiple times. At what stage of the litigation did Judge O'Brien say that? He said that at the time he made the award of the $27,000. He basically said, look, you came with receipts. He said, as I'm taking you with the awards. At the time when he granted your client the right to get the cars back? They were two separate. The initial hearing, they made the claim that there should be unjust enrichment. The judge heard the issue as to who had better title first, and then he said, now we're going to set this for hearing on the next date for whether or not there should be an offset, and if so, how much. So those were two. They were held relatively close together. The first one, the trial was at 4-16, and then at 5-24 was the unjust enrichment. So those were two separate hearings. And it wasn't until the 5-24 that we went through a series of, you know, there was an order on 6-17, 6-21, 6-24. Then they were transported on 6-26, inspected on 7-12. He received his reports from experts on 8-26. The motion was considered on 8-29. The motion died on 10-2. Filed at 2-14-1 and 10-13. It's all on 20-13. Then the judge asked on his own motion on 10-15 to decide whether or not the propriety of the 2-14-01 motion was there. Set a briefing schedule at 10-30. This goes on and on. We went through a series of things. But it wasn't until the 2-14 was DWPed for what we have certainly argued, I think eloquently, that it was inequitable given the fact that it was initially a settlement status that turned into a DWP in a three-day period. Well, but here's the problem. If the DWP is not appealable because it's not final, there's a problem with appealing the 2-14-01 dismissal. Okay? But there's also, in conjunction with that, there's this turnover order. And the turnover order, which is issued in the written order the same day, may very well be appealable. And you contend that you appealed that in a timely fashion. But my question is, where in your brief do you address any error with regard to issuance of the turnover order? I didn't. It was the dismissal of the DWP in the order which included that we did the motion to reconsider and back. The relief we were seeking from this report was to allow this 2-14-01 motion to proceed because it should not have been dismissed. And the only way to prevent was to reinstate it. Because at that time, with the pending sale, my guy wants to keep his car. At that point, they've been sheriff sold. How do you stop that? That was the question that we wrestled with. And, again, this was all obviously. You could have asked for a stay, couldn't you? To be quite frank, Your Honor, everything I asked from that judge was denied. Well, you could have. And I went through that motion after motion after motion. You could have asked us. Could you have asked us? So what my client and I, with my advice, came to the conclusion was the only way to stop things is to appeal. That way it stops. And if we can get it back to we're hearing on 14-1, which we're very confident, given the fact I've got photographs and everything else, that that was the only way to keep these cars from being sold by the sheriff. I mean, that's what we were trying to prevent. And being heard on the fact that information was obtained after. I mean, to be quite frank, the certification. You could appeal the turnover order to stop the cars from being sold, right? And you did. Correct. I appealed that order. It was a reconsideration of the entire order. But if you appeal the turnover order and you get a stay, somehow you've got to stay because they haven't been sold, right? Well, yeah, during the penalty appeal, they're being held because. Okay. Yeah. So you appealed the turnover order, but you didn't discuss the turnover order in your brief because you wanted to discuss the 214-01. Correct. We really wanted to be heard on the 214-01. Right. We don't have jurisdiction over that. What arguments have you made to support review of the 14-02 order, the turnover order, the sale order, that apparently wasn't entered until December 20th, which you had a right to appeal? That was not the focus of our appeal. Let me ask you a procedural question. The December 17th date, that was for, my understanding, is a status hearing on the settlement. The December 17th date, the way it works, December 12th, I get a phone call from counsel who stated, yeah, we've blown our time to. We were supposed to have a hearing on the. And he said he made a settlement offer. And then the matter was continued to the 17th of December. On the 17th, that's, I was. My question is, was that a status date on the settlement? Correct. Or was it a hearing date? It was status. It was status. It's a state set of the order, yes. All right. And then the form of communication between you and counsel, was there a particular form of communication that was agreed upon by the parties because there's some. There was email and then there was mail. Everything had been done by mail but except for this. Okay. But certainly it was my assumption since it was the request of the defendant and I didn't, you'll see as attachments to that order, that there was emails back and forth with respect to settlement, that that's what, we were narrowing it down. And I missed essentially the one date because I was, I didn't know about the second. We don't know why you missed the second date. Because I didn't know that the second date, it was only three days after the third. It's your. I do understand that. However, I think given. What did you argue, just briefly, what did you argue as to why the court should not have allowed this unjust enrichment claim? What was your position? At the initial unjust enrichment? Yes. Right. What was your position? Apparently Mr. Maniscalco argued that he bought these cars and he did some work on them and that he was paying for whatever, insurance and housing, wherever. And then the court, even though he purchased them from someone who stole the cars. Now, then the court gave him this $27,000. What was your argument as to why he wasn't entitled to unjust enrichment from your client? The basis for the argument initially was that Mr. Maniscalco bought them without title. Yes. There was no title transfer. So it sort of should have been. Well, even if he bought them with title. Let's go to the next one. Let's assume that the other guy phonied up something. I don't really know. I don't care. I want to know what was your argument as to why he wasn't entitled to unjust enrichment from pro. Maybe he was entitled to it from the thief. I don't know. What was your argument as to why your client wasn't obligated to give money to someone who bought them from a thief? Well, that was the first step. The second step was that the appropriate party to seek relief from was Victor Morales, the person who stole them. All right. So the court didn't agree with you? Did not. But did you have case law that supported that position, that the unjust enrichment would only lie with the person who actually, you know, bought them from as opposed to some previous owner or the owner actually? That was done at oral argument before the judge at that time. The other thing is what I said initially, they asked for somewhere in the neighborhood of $100,000. One of our arguments, too, is that there was a period of time beyond which there was notice that the cars were not, that he could not have good title. So all the costs post that were immediately wiped out. And we made, with respect to, we did research on what appropriate storage fees were and so forth, and we lowered even further. So the judge, you know, he came from $100,000 down to $27,000, based on the arguments that we made before him. He dismissed outright the fact that, you know, Mr. Maniscalco should have been going after the thief, if you will, Mr. Victor Morales. Okay. I just wanted to know what your arguments were. None of which are in the briefs here, though, because you chose to focus your argument on 1401. Yes. All right. Anything else? No. Okay. All right. And we'll hear from you again after we hear from opposing counsel. Good morning, Your Honors. Bill Tash again. Let me address what you've. May I answer? William Tash, BASC. Thank you. Let me address the appealability of the order. It's an issue we looked into, and I think he does have a problem there. Actually, the theory that he puts forth for the appealability of his order, the theory that's put forth in Mr. Crow's brief is an interlocutory appeal under, I believe it's 304B-3, which allows for the direct appeal of any denial of a 214-01 petition. It says a judgment. It says 304B-3. The following judgments or orders are appealable without the finding required or appeals under paragraph A of this rule. And then it says a judgment. It doesn't say final. It simply says a judgment or order granting or denying any of the relief prayed in a petition under Section 214-01. Other parts of the rule do refer to the language of final judgment. This one says a judgment or order granting or denying any of the relief prayed for in a petition under Section 214-01. So what were you going to say about that, Counselor? Well, and I'm not saying that that has any implication here, but I'm just pointing out that that was the basis for the appeal as set forth in Mr. Crow's brief. Right. So what do you think about this? So I disagree because of the timing of the way that it was done. December 20th was when, as you pointed out, the turnover order was entered as well as the order dismissing his 214-01 petition for want of prosecution. It was the next thing that he did after that was not a motion to reconsider. It was a motion under Section 213-01 of the Code of Civil Procedure to vacate the DWP entered on December 20th. That 213-01 motion was timely filed within 30 days. Judge O'Brien denied it on January 14th. What was the basis for the denial? The denial of the dismissal for want of prosecution? No, the 213-01 denial. It's 213-01. Because the order doesn't indicate a basis. It just says that it's denied. The record is silent on that. And I was not Mr. Maniscalco's attorney. I wasn't involved in this case until this went on appeal. So I wasn't present for that hearing. I would argue, I mean, the case law tells us what the standard is for 213-01 motions. It's to do substantial justice between the parties. And the case law also gives factors that the court is allowed to take into consideration. And the 213-01 critically is a decision that's within the trial court's discretion. So we believe that Judge O'Brien could and most likely did consider not only the fact that Mr. Crow's attorney did not show up for two sequential hearings, but also the fact that there was no meritorious claim to back that up. And so one of the factors you can consider when you're facing a Section 213-01 motion is whether the movement actually has a meritorious claim. Are you familiar with the entire record and the proceedings and the trial? Yes. What was the reasoning that the court used to grant unjust enrichment to a party who purchased it from another individual and then that person actually stole the cars? And then the unjust enrichment was awarded against a person whose cars were stolen from him. What was the theory of the unjust enrichment that supported the granting of that relief? Well, that's a great question. There are numerous theories put forth in the parties' pleadings back in those days. So I can only speculate as to what theories the trial court actually bought at the trial. I wasn't present. What was the most persuasive one, would you say, arguing in retrospect? In retrospect, I would say the fact is that I think the trial court was convinced Mr. Maniscalco was a bona fide purchaser for value. He was an innocent purchaser. And Mr. Crow had basically let these cars go. It was years, I want to say at least five years, possibly ten years, between the time that Mr. Crow turned these cars over to Mr. Morales, the thief, and the time that he woke up and decided he wanted them back. And that's when he discovered that they had been sold to Mr. Maniscalco. So the years between when Mr. Maniscalco was there any evidence that the cars weren't stolen? I thought that the record indicates that the cars were actually stolen and the person who stole them went to the penitentiary for his thievery. I would agree. That's a fair reading of the record. So they were stolen? Correct. I think that was discussed. How is the owner, you know, sitting on his rights if his cars were stolen and that there was testimony or suggestion in the record that he stored them at this friend's house and then the friend actually ended up selling them? Right. Well, I think Mr. Maniscalco, like I said, I think the trial court was convinced he was an innocent purchaser. He didn't have anything to do with the theft. And so since he took care of these cars, he had them detailed on a regular basis. He tried to keep them running while they were in storage. And, in effect, by finding that title belonged to Mr. Crow and having the cars turned over to Mr. Crow, Crow was benefiting from the value that my client had put into the car. I have a question. Doesn't unjust enrichment require a finding that the defendant, in this case the counter-defendant, doesn't unjust enrichment require a finding of some wrongdoing on behalf of the person who is being unjustly enriched? What wrongdoing was there on the part of Mr. Crow? I don't know the answer to that question, the legal answer to that question, whether an unjust enrichment requires a finding of wrongfulness. And I do not know if that finding was made at the trial court. I do know the judgment was entered a long time ago and it was never appealed. I have a timeline question. Maybe I'm misreading the record here, According to the record, Crow purchases the vehicles on November 1, 2007. And then before the trial court, Mr. Maniscalco is looking for relief on unjust enrichment from January 22, 2008 to at the time of the order of replugging that's entered. So I don't see the years, I see like months between the time that Crow buys the cars and sometime before January 2008, Mr. Maniscalco purchases the vehicles from Mr. Morales. So I don't see the years. And the record also indicates that Mr. Crow is constantly asking Mr. Morales to see the cars and he keeps pointing them off. That was Crow's allegation that he had been constantly asking to see the cars from Mr. Morales. Is the record incorrect about when Mr. Maniscalco was looking for relief from January 22, 2008 to the order of replugging? That sounds correct, Your Honor, yes. Okay. But I think the replugging order was entered sometime in 2013 or 2012 and the counsel will correct me if I'm wrong. Yeah, but that means your client purchased the vehicles shortly after when Mr. Crow purchased the vehicles. I was just going back to your point about saying that it was years that Mr. Crow sat on his hand and let the cars in the storage. It seems more like months. Maybe weeks. Well, now I need to refresh my recollection on the timeline going back. All right. Why interrupt the argument? Go ahead. Well, I think that's an interesting point. My understanding is that there were a period of years between the time when Crow turned over the cars to Morales that Morales held the cars in his custody. There was then a sale from Morales to Maniscalco. That was another period of at least one year. I believe it was multiple years. But the record shows that. And it's the time, you're correct, Your Honor, in that it's the time from when Mr. Maniscalco purchased the cars to the order of Replevin when title was found to be good title in Crow's name. It's that time period that Mr. Maniscalco was seeking unjust enrichment for what he put in the cars. I don't know if you ever finished why you believed that the 214.01 isn't time. Right. Thank you. So I just want to clarify the immediate time frame prior to the notice of appeal being filed. December 20, 2013, the DWP of the 214.01, 214.01 is disposed of in that manner. The turn of order is entered on the citation. Mr. Crow filed a motion under Section 213.01 immediately after that. It was denied on January 14, 2014. Then Mr. Crow files a motion to reconsider the denial of his Section 213.01 motion to vacate the DWP of the Section 214.01 petition. And he files his notice of appeal after that motion to reconsider is filed. And his notice of appeal identifies not the turnover order entered on December 20th. So the notice of appeal doesn't make any reference to anything in the citation proceeding. It does not reference the order entered disposing of his 214.01 petition on December 20th. The order appealed from, according to his own notice of appeal, is the order of January 14, 2014, which was the denial of his Section 213.01 motion to vacate, the DWP of his Section 214.01 petition. So our position is that if there is an appeal, if there is an order that's properly before your honors on review, it would be the denial of the Section 213.01 motion. Which is not normally appealable if it's a dismissal for one prosecution, is it? That's correct. Because it doesn't become a final judgment. A DWP is a non-final order. There's no special rule for appealing those. The case is, I think Justice Wray has referred to Vaughn earlier, that says that a dismissal from a DWP is not appealable until it becomes a final judgment, which it doesn't become until a year passes and then the order is actually with prejudice. That's exactly right. Does a motion to reconsider, to your knowledge, delay the time for appealing a judgment or order granting or denying any relief paid for in a 214.01 case? Possibly. But there is case law that says, so to go back to the 304B3, which I'm just going to call Crow's Theory, because that's the theory he put forth in the brief. Under that theory, there's a case, McCorry v. Gruner-Rotnay, it's 332 Bill App 3D 935, which holds that you can have one post-judgment motion from the Section 214.01, but only one. Successive post-judgment motions do not extend the time. So in this case, there were successive post-judgment motions from the Section 214.01. You had the 13.01 and then you had the request in January to reconsider the denial of the 13.01. Correct. So that's, I think, the problem with his theory under 304B3. And I don't think under 304B3 that that DWP order would be appealable. And that's assuming that a DWP of the 214.01 is appealable under 304B3, which is arguable, and I don't think there's case law on that. The case law that you were referencing, Vaughan. That's a straight-up DWP on a regular old action of law. Of a complaint. But I think there's other case law, though, that says that the rules for a dismissal for Vaughan prosecution apply under the 14.01. In other words, a 14.01 can be dismissed for Vaughan prosecution. There's lots of case law that says a petition under 214.01 has the same character as a complaint. I think Attendorf or Ossendorf is the leading case there. Section 214.01 is the equivalent of a complaint. It needs to be answered in the manner of a complaint. If evidentiary matters are presented, they need to be heard before the trial court as in a trial. So Section 214.01 arguably does fall under the same rule as expressed in Vaughan, which says that a DWP is not a final and appealable order. It becomes final and appealable on the one-year anniversary. And we weren't comfortable with that the year after the DWP was entered. Because that would have nulled this whole case if you would have refiled the 214.01 in that year. What about the turnover order? Do you agree that the first time it was entered was December 20th when the court said I'm going to allow this sale of the cars to pay for the judgment? Yes. Was that a final judgment? On the citation, yes, I do believe it was. And then the motion to so is that one untimely as well? Because there was one motion to reconsider or motion to vacate under 13.01? Yes. This would be an untimely appeal of that order. And actually this is the first time I'm hearing that this is an appeal of that turnover order. Yes, I understand. But I would disagree that that was within the scope of his notice of appeal, and I would also argue that it would be untimely. All right. Because he had two jumps. He had the 13.01 and then he had a motion to reconsider the 13.01. And told the time for filing a notice of appeal. I have a question. The briefing on the 214.01 was stayed because, I guess, the parties were entered in the settlement negotiations. And then the court continued the matter to December 17th for status on the settlement. Right. And Mr. Crow's counsel did not appear on that date. Now on the 20th, there's a DWP that's entered, right? And then there's relief granted for the turnover. Where did that motion come from? Because prior to that, there was the briefing on the 214.01. Then all of a sudden on the 20th, we get an order by the trial court indicating that the request for turnover had been allowed. So was that a verbal motion? Or what kind of motion was that? And where did that motion come from? Because it doesn't appear to be in the record. Well, actually, Your Honor, I believe in all the, let me back up to the judgment was entered. Within, I think, two days, my client's prior counsel filed a citation to discover assets. And that citation sought turnover of the vehicles to be sold in satisfaction of the judgment. That actually occurred before any post-judgment motions at all or post-judgment petitions by Crow. Well, didn't he come in on a motion to reconsider after that? There was a motion to reconsider. And that was denied? Which was denied. Okay. That was a motion to reconsider the judgment itself. Right. And it was denied as, again, I wasn't there, but I believe the rationale for denying that was that it was untimely. Right. I understand all that, but then so what, did counsel on the 20th renew the motion for the turnover? Well, every, from the time the citation was filed and to the December 20th order, every order states that the citation is continued. I don't know if it's in every single order, but the citation is the subject of every status hearing from the time it's filed until December 20th. No, I understand that. But what I'm trying to get at is how did then the court, did the court do it on its own motion, grant the turnover, or was there a written motion that was presented by counsel on that day on the 20th? That's what I'm getting at. Because on the 20th, the case is being dismissed for warrant of prosecution. There's no reference to the settlement negotiations going on. But then the turnover is granted, okay? So how did that happen? Was that on the court's own motion? Was it counsel's request that the turnover be granted? Well, it says in the December 20th order, the motion of judgment creditor for turnover is granted. Right. So there had to be a motion filed by the judgment creditor, which is Maniscalco. So where's the motion? It wasn't placed in our record. Is that the deal? I'm trying to recall seeing a written motion for turnover. I can't recall seeing that. But I don't think that it would be necessary. Would this then be, although we still have a motion for 1301, and then we have another motion to reconsider, would the order on December 20th actually be, by dismissing the 1401 for warrant of prosecution, is the order granting the turnover in essence an order denying the 1401 relief? Because it is allowing the defendant's counter plaintiff to actually, at that moment, have the cars sold. There was no other order entered before that date, allowing the sale of the vehicles to satisfy the $27,000 judgment. I'm glad you asked that, because I think it's important to understand the Section 214.01 petition is its own proceeding, and the citation is its own proceeding. Right. But in the 1401, wasn't the petitioner requesting that the court vacate all of the orders that had entered in terms of the unjust enrichment? Yes. So isn't that what was being sought at that time in the 1401? And when the court granted for the first time, without the lawyer or the parties being present, he allowed the sale of the vehicles to satisfy that judgment. Why isn't that the denial of the relief requested in the 1401? Because it stems from the citation proceeding. It doesn't stem from the 214.01 proceeding. Well, I'm asking whether the rule encompasses. It stems from the citation proceeding, doesn't it? Correct. I would agree with this. The citation proceeding leads to the turnover order, and the citation proceeding is separate and apart from the 214.01 proceeding. Correct. The 214.01 proceeding is dead. And then, based on the citation to discover assets, which stems from the original judgment, which, by the way, can't be appealed because that time passed, the citation proceeding leads to the turnover order. Didn't he ask in his 1401, if I may address this? Well, in the 214, he asked to vacate the judgment. Right. Didn't he ask to vacate all the relief that was granted? Yes, he did. But I think that I can answer both your question by pointing out the section 214.01 does not stay. The fact that a petition has been filed under section 214.01 does not stay post-judgment proceeding. Yes, I understand. It's a new proceeding. So the trial court theoretically could have granted the motion for turnover pursuant to the citation, even while the 214.01 petition was pending. It just so happened that Judge O'Brien seemed to feel that granting the turnover order at that point was appropriate because the 214.01 had been disposed of. But I don't think that that would necessarily mean they're tied together. Well, I do think that it certainly could be argued that the denial or the dismissal of the 1401 is denial of the relief. But I do think there's a problem with filing a notice of appeal within 30 days. I mean, I'm not saying it even does come under 304B. I'm saying it can be argued. But then we have a 1301 petition, and then we have a subsequent motion to file a notice of appeal. Right. And I think that's the problem with the 304B.3 theory. And that leaves him with his options under 303, characterizing the DWP as a final judgment, which Vaughn tells us DWP is not a final judgment. It's not final until the one-year anniversary. What about his argument that it would be unjust, inequitable to allow the sale of the vehicles in light of the 1401? That is a motion that could be made at the trial court, and he could ask the trial court to stay the enforcement of the judgment while his 214.01 pens. So if I could just briefly address what I think, just in case the Section 213.01 motion is on review. It doesn't sound like it is. But I think the court just needs to remember that Judge O'Brien was entitled to take into consideration not just the fact that Mr. Kennedy failed to show up at two hearings, which Jackson and Tiller, the cases cited in our brief, tell us is by itself enough to DWP and to deny a 1301 trying to undo that DWP. But Judge O'Brien was also entitled to take into consideration the fact that this litigation had been going on for such an incredibly long time, the trial had been set, and everything in the 214.01 petition that Crow was trying to pursue were facts that can and should have been brought up prior to the judgment being entered at the trial. Wasn't there, after the judgment had been entered, doesn't the record clearly indicate that Mr. Maniscalco indicated to the circuit court that he didn't even know where the cars were located that he purchased as a, you know, purchaser for value. Didn't he tell the court that? Didn't he say he didn't know if they were in Cook County, DuPage County, and at some point it became apparent that they weren't in Cook County, and the sheriff of Cook County wouldn't proceed to retrieve the vehicles because it was outside of Cook County. But at some point before that, wasn't there a statement that the purchaser had no idea where the cars were located? Didn't he say that to the court? I'm not aware of that statement. I heard it referenced in the brief. So you don't even believe that's how it is supported by the record? Well, the record speaks for itself. All right. So if that statement's in the record, I'm not going to argue against it. And the vehicles were ultimately discovered in DuPage County, correct? I'm sorry? After the judgment was entered, the vehicles were, in fact, in DuPage County. Yes. And that postponed Mr. Crow being able to obtain the vehicles for a period of time. It did, and that was addressed by the trial court. Okay. I think in due course. I think the trial court took care of that. I think the parties worked together to get it out of DuPage County and into Cook County, as it should have been. And they still remain under safekeeping today, or so we're told. So with that, I think I've covered everything I need to cover. And if there's no more questions, I'll conclude. Thank you, Counsel. Thank you. Short rebuttal. Just a couple of things. This trial was heard in the courtroom 1401. The Pleasant Actions is one of the more unique things they do. Typically, that courtroom deals with people who don't pay for their rented furniture and credit cards and car sales. As a consequence, although it is a trial court, it's a trial court that's done on the fly. Even something as complicated as this, the court pushes it very quickly. I'm only saying that by way of context. It's some of the things that are in the record. There are some things that are not in the record because it's not as if you were in the Chancellor's Department, Law Division, or even some of the municipal courtrooms where you're actually putting on a trial, which all of us do. That said, the reason that essentially neither side has given up on this, or at least my client has advised me to continue to go, is that there has been a sense or a smell of inequity from the beginning. My client, in 2007, bought these cars and put them in an acquaintance, business partner's garage. They were sold to Maniscog in 2008. In 2009, after a series of him calling, hey, are my cars okay, he started to get suspicious. This is all in the record. He went to the house. He tried to look through the windows. There was nothing. Finally, Mr. Morales said, you know what? I got broke. I sold them. Do what you got to do. So we had to file a criminal complaint. That's how we found out through the criminal action, which Mr. Morales was ultimately convicted. That's how we found out who bought them, because the title of the transfer in the police department was located there, so Mr. Maniscog. We felt that we had a pretty good case for getting our cars back, but to be saddled with the unjust enrichment from essentially a guy who had his car stolen was a bit of a shock. As I said, there was a lot of motion practice. We were in front of Judge O'Brien a lot, and it just seemed like we weren't able to understand how he justified some of his decisions. When it got to the point here when you ask why did we take the appeal the way we took it, I firmly believe, as did my client who was there as well, that if we didn't get it out of the hands of Judge O'Brien, the cars would have been sold, and the inequity there ultimately comes down to what is really fair here. Maybe there's an offset. Not for purposes of our jurisdiction. Our jurisdiction doesn't arise from equity or anything like that. It derives from the rules that the Supreme Court has promulgated. We don't have jurisdiction because of some inequitable action. I understand that argument as far as 1301, but I don't know that that can ever take us to whether or not we have jurisdiction. It's a threshold issue before us. It certainly was the intention of myself and my client that by trying to vacate the order of the 20th, which was the Let me ask you about the 20th. The trial court's order, the typed up one, indicates that there was a motion, but the record doesn't contain a motion. So to your knowledge, was it a written motion? Was it a verbal motion? What type of motion was it? Because it's clear that the order indicates that a party made the motion, so it wasn't on the court's own motion. Given the way that Mr. O'Brien ran his courtroom, there would not have been I never received a written, and obviously it's not in the record. I am positive, given the way this trial had proceeded, that it was, if a motion at all, it was an oral motion. If you want to know what I suppose, I suppose he wrote the quick motion up, went back to his office, typed this, and dropped it off his stamp without even being essentially looked at. That's kind of the way the courtroom operates. So by my virtue of not being there, which my excuse is on the record, and I think it was a communication breakdown, is that Mr. Malitz, who was Mr. Maniscalco's attorney at the time, had an opportunity to put the nail in the coffin. I can also tell you that at one point when my motion for reconsideration was denied by Judge O'Brien, he said, you know what? I've had enough of this case. I've got to get it off my docket. There was that sense there. What was the date of the entry of the judgment for $27,525? May 24th of 2013. How long do you have to file a 214.01 petition? No, the 214.01 I filed after. No, no, no. I'm asking, how long do you have to file a 214.01 petition? How long? A year. Is it a year? What was that date? I filed that on October 15th of 2013. Each and every time I stepped forward, Judge O'Brien said, we're having difficulty getting the cars. We were asking whether a motion to vacate a DWP, but you had 30 days. No, after a DWP is entered, you can refile within a year. But, no, in order to file a 14.01, what's the outer limit? What's the outer limit? It's either one year or two years based on the new evidence. Based on the new evidence? You have to have a fine, a 214.01. You have to have a judgment. It has to be based on the judgment, I thought, the date of the judgment. Correct. From that date. Right. One or two years from the date of judgment, you're not sure. Correct. I think that after two years, you have to establish fraud or something. Yeah, the case laws, it's not supposed to give trial attorney another bite at the apple. It's two years, isn't it? Two years. Okay. It's two years. So, what happens on May 21st of this year? What was the date of the judgment? The date of the judgment was May 24th. Okay. So, what happens on May 24th of this year? Still two years. So, you better get moving. I certainly am going to. Okay. Anything else? Nope, nothing else. All right. Thank you very much. This, obviously, has been a really nice, long, freewheeling discussion and a fascinating issue. And we're going to definitely give it our, as we already have, our undivided attention, and we'll take it under advisement, and you'll hear from us as soon as we can. Thank you very much. I've actually never argued in front of the state. I've done four in front of the federal, and I had a real ball here today. Thank you very much. Thank you. Thank you both. All right. Thank you.